**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No.  12-00293-KD** |
| | * | |
| **RANDY LAMAR WILSON, JR.,** *a.k.a.*, | * | |
| **RASHEED WILSON** | * | |
| | * | |

**RESPONSE TO MOTION FOR RECONSIDERATION OF
PRE-TRIAL DETENTION ORDER**

Comes now the United States of America, by and through the United States Attorney for the

Southern District of Alabama, and files this response to defendant Randy Wilson's motion for

reconsideration of this Court's detention order.  [Doc. No. 32]  For the reasons explained below, the

motion for reconsideration should be denied.  Wilson also makes an unsupported request for an *in

camera* review of the rough notes taken by agents at the time of his arrest.  This request should also

be denied.

**Background**

On December 11, 2012, defendant Randy Wilson was arrested on a jet-way in Atlanta's

Jackson-Hartsfeld Airport as he was attempting to board the first leg of a flight to Casablanca,

Morocco.  Wilson and co-defendant Mohammad Abukhdair, who planned to travel separately,

intended to rendevous in Morocco before entering Mauritania.  The purpose of the trip was so that

Wilson and Abukhdair would be in a position to join a group with whom they could engage in

violent jihad .  A grand jury subsequently indicted both for conspiring to provide material support

and resources to terrorists, in violation of 18 U.S.C. § 2339A.  [Doc. No. 22]  Abukhdair was also

charged with passport fraud, in violation of 18 U.S.C. § 1542.

-1-

At Wilson's December 13, 2012 arraignment, the United States filed a motion to detain on the grounds that Wilson was both a flight risk and a danger to the community.  [Doc. No. 8]  The probation office also recommended Wilson be detained until trial.  A hearing was held on this issue during which the United States proffered the facts from the complaint affidavit, presented testimony from FBI Special Bomb Technician Agent Tim Green, and argued in favor of pre-trial detention.  Wilson's attorney cross-examined SABT Green and presented his own arguments in favor of pre-trial release.

After taking the matter under advisement, Wilson was ordered detained.[1]  [Doc. No. 27]  Wilson now requests reconsideration of this detention order.  [Doc. No. 32]

<u>**ANALYSIS**</u>

**A.      Motion to Reconsider Should be Denied**

As an initial matter, it is important to note that Wilson is not appealing the detention order to the district court.  Such an appeal would garner a *de novo* review of the order.  L.R. 72.5(a)(3); *see, e.g., United States v. Koite*, 10-0099-KD, 2010 U.S. Dist. LEXIS 60757, *1 (S.D. Ala. Jun. 17, 2010).  Rather, Wilson is requesting that the order be reconsidered by the magistrate.  While there are no statutes or rules expressly providing for motions to reconsider in criminal law, this Court has the discretion to address such motions if there has been (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or manifest injustice.  *See United States v. Jewitt*, 09-0076-KD, 2009 U.S. Dist. LEXIS 75021, *1 (S.D. Ala. Aug. 24, 2009).

It appears this Court has not addressed the applicable standard of review for motions to reconsider a detention order.  Wilson's motion is essentially a request to re-open the matter of

---

[1]      Co-defendant Mohammad Abukhdair did not contest his pre-trial detention.  Thus, he was ordered detained without a detention hearing.  [Doc. No. 55]

detention, pursuant to L.R. 72.5(a)(2), due to newly received evidence.  Thus, the United States proposes the standard should be that Wilson's motion to reconsider should be denied unless the new evidence calls into question the Court's previous rationale for pre-trial detention.

In its detention order, the Court held that the testimony and information provided at the detention hearing established that there were no conditions that would reasonably assure the safety of the community or ensure Wilson's future appearance in court.  [Doc. No. 27, pp. 2–3]  With regard to the risk Wilson would not appear at future court proceedings, the Court specifically highlighted the fact Wilson "has multiple failures to appear on various traffic violations."  *Id.* at 3. Pertaining to the danger to the community prong, the Court highlighted SABT Green's testimony that Wilson and Abukhdair were planing to travel overseas "to engage in violent jihad," and that the co-conspirators "had considered robbing businesses and arming themselves for home invasions to obtain the money for the plane trip to Mauritania."  *Id.*  Finding that the "weight of the evidence against [Wilson] is strong," and after considering the other factors set out in 18 U.S.C. § 3142(g), the Court ordered Wilson detained.  *Id.*

Wilson begins his motion for reconsideration by providing a recap of what he believed were the pertinent parts of SABT Green's testimony, and then by providing the full text of Wilson's voluntary, hand-written confession made to the FBI after his arrest.  Neither SABT Green's testimony nor the confession are "newly available evidence" that should be considered in a motion for reconsideration.  *See Jewitt*, 2009 U.S. Dist. LEXIS 75021 at *1.  The Supreme Court has explained in the civil context, where motions for reconsideration are much more common, that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).  The Court heard SABT Green's testimony and learned about the

contents of Wilson's confession during the detention hearing.  Thus, the Court's findings regarding the persuasiveness of this evidence should not be relitigated in a motion to reconsider.

At the end of his motion, Wilson offers two e-mails as newly available evidence, which can properly be considered in a motion for reconsideration.

First, Wilson argues that a July 9, 2012 e-mail shows that he and Abukhdair abandoned their conspiracy.[2]  [Doc. No. 32, p. 5]  Yet, Wilson does not explain how this e-mail has any bearing on the Section 3142(g) factors.  The only factor that could even arguably be affected by this e-mail is Section 3142(g)(2), weight of the evidence.  However, the Court already found the weight of the evidence against Wilson to be strong.  This July 9, 2012 e-mail does not weaken the case against Wilson in any meaningful way, especially in light of the fact that he attempted to board a plane on December 11, 2012 with the intention of traveling to Africa to wage jihad.

---

[2]      The United States strongly disagrees that either Wilson or Abukhdair ever abandoned their conspiracy to provide material support and resources to terrorists.

In the Eleventh Circuit, "[i]t is well settled that an accused conspirator's participation in a criminal conspiracy is presumed to continue until all objects of the conspiracy have been accomplished or until the last overt act was committed by any of the conspirators.  *United States v. Finestone*, 816 F.2d 583, 389 (11th Cir. 1987); *see also United States v. Young*, 39 F.3d 1561, 571 (11th Cir. 1994). "A conspirator can overcome the presumption of his continued participation in a conspiracy by showing that he withdrew from it."  *Finestone*, 816 F.2d at 589.  "Withdrawal, however, is an affirmative defense, which the defendant has the burden of proving."  *Id.*  As the Eleventh Circuit explained in *Finestone*, this is a very substantial burden:

> To establish that [a defendant] withdrew from a conspiracy, the defendant must prove that he undertook affirmative steps, inconsistent with the objectives of the conspiracy, to disavow or defeat the conspiratorial objectives, *and* either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities.

*Id.* (original emphasis); *see also Young*, 39 F.3d at 1571.

Significantly, "mere cessation" of criminal activity is insufficient to demonstrate withdrawal from a conspiracy.  *United States v. Westry*, 524 F.3d 1198, 1217 (11th Cir. 2008).  Rather, an attempt to disavow or defeat the conspiratorial scheme must be through an "unequivocal act."  *United States v. Rosenthal*, 793 F.2d 1214, 1244 (11th Cir. 1986).  Moreover, the break with the other conspirators "must be both clean and permanent."  *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 839 (11th Cir. 1999) (citing *United States v. Pippin*, 903 F.2d 1478, 1481–82 (11th Cir. 1990)).

Second, Wilson claims an e-mail he sent to the UCE discussing some the merits of living in a Muslim country versus the United States, somehow relates to the issues of safety to the community and risk of flight.  [Doc. No. 32, pp. 5–6]  Again though, Wilson provides no argument explaining how this newly available evidence would affect the Section 3142(g) factors.

None of the newly available evidence accentuated by Wilson in his motion to reconsider calls into question the rationale for detention laid out by the Court in its detention order.  Accordingly, Wilson's motion to reconsider should be denied.

### B.       Even if the Standard Were *De Novo* Review, the Motion Should be Denied

As the United States explained above, it does not appear that this motion is subject to *de novo* review, because Wilson has not appealed the order to the district court pursuant to 18 U.S.C. § 3145(c).  However, even if the Court were to treat this as an appeal necessitating *de novo* review, Wilson's motion should still be denied.

Section 3142(g) sets out the factors to be considered "in determining whether there are conditions of release that will reasonably assure the appearance of a person as required and the safety of any other person and the community."  18 U.S.C. § 3142(g).

The first factor the Court must consider is "the nature and circumstances of the offense charged, including whether the offense is a . . . federal crime of terrorism. . . ."  18 U.S.C. § 3142(g)(1).  Both Wilson and Abukhdair have been charged by indictment with conspiring to provide material support and resources to terrorists, in violation of 18 U.S.C. § 2339A.  Furthermore, Wilson and Abukhdair were not merely attempting to send supplies or money to terrorists, but rather, were attempting to travel to a foreign country and provide themselves as personnel to a terrorist group knowing or intending that they were to be used in preparation for, and in carrying out, a violation of 18 U.S.C. § 956(a) (conspiracy to kill, maim, kidnap, injure, or damage property in a foreign country).  This is an extremely serious charge garnering an advisory guidelines range of life

if he is convicted at trial.[3]   [Doc. No. 34]   Due to the seriousness of the charges and the circumstances of the offense alleged, this factor weighs strongly in favor of pre-trial detention.

The second factor to is "weight of the evidence against the person." 18 U.S.C. § 3142(g)(2). The facts in the Complaint [Doc. No. 1]and SABT Green's testimony establish that Wilson and Abukhdair were involved in a lengthy conspiracy to materially support terrorists by traveling overseas and engaging in violent jihad.   The details of this conspiracy were recorded in numerous conversations between Wilson, Abukhdair, an FBI Undercover Employee, and a Confidential Human Source.

As explained in the Complaint, Wilson and Abukhdair initially intended to achieve their goal by traveling from the United States, to an interim country, and then to Somalia.  There, they planned to join al-Shabaab and Wilson's former roommate, and current FBI most wanted terrorist, Omar Hammami.[4]  Wilson and Abukhdair's own recorded statements make clear that their concept of jihad involved engaging in violent acts.  As Wilson's co-conspirator succinctly put it, "*jihad means people are going to die. . . . This is what jihad is.  This is what war is.*"

To fund their conspiracy, Wilson and Abukhdair discussed robbing local businesses and conducting home invasions.  Ultimately, Wilson came up with the idea of having the UCE pay for the tickets on the UCE's credit card.   Since they did not plan to pay the credit card bill or come back to the United States, the tickets would be "free."

---

[3]      As currently charged, Wilson faces a 15 year statutory maximum.

[4]      Although erroneously reported by the media, it is true that Wilson was a close friend and former roommate of Daphne-born terrorist Omar Hammami.  The confusion seems to have stemmed from SABT Green's testimony during the detention hearing.  When asked whether he knew if Wilson had lived with Hammami, SABT Green testified that he did not know where that fact came from.  He did not, as was widely and erroneously reported, testify that the fact was untrue.

Later, the conspirators' final destination changed from Somalia to Mauritania/Mali, but their objective remained the same.[5]  Wilson wanted the group to go to Mauritania so that they would be well-positioned to join the emerging jihadist front in neighboring Mali.  Wilson directed the UCE to purchase tickets for the group to fly to Morocco where they would rendevous and enter Mauritania together.

On December 11, 2012, Wilson attempted to board the first flight on his trip to Morocco. After being arrested, he voluntarily wrote out a confession acknowledging that he was attempting to travel with the intent to fight jihad in a foreign country.

The weight of the evidence in this case is substantial and certainly weighs in favor of pre-trial detention.

The third factor is the history and characteristics of the defendant.  18 U.S.C. § 3142(g)(3). While Wilson has strong ties to this community, he also has a demonstrated history of failing to show up at court appearances.

Finally, the fourth factor is the nature and seriousness of danger to persons or the community if Wilson were released.  Throughout the conspiracy, Wilson has made statements about harming non-Muslims.  Furthermore, his release could result in serious danger to the CHS, UCE, and others who will likely testify against Wilson if he chooses to go to trial.

For these reasons, the Section 3142 factors decisively weigh in favor of Wilson's pre-trial detention.  Accordingly, even if a *de novo* review of the detention order were conducted, Wilson's motion to reconsider should be denied.

---

[5]     By summer or early fall of 2012, Wilson decided it would be too difficult to travel to Somalia.

C.      **Wilson's Request for Agent Rough Notes Should be Denied**

In his motion for reconsideration, Wilson makes a vague request for an *in camera* review of the agent rough notes taken during his post-arrest interview.  Wilson makes no arguments and provides no law supporting this claim.  Thus, this request should be denied.

### CONCLUSION

For the reasons set out in this response, the United States requests that the Court deny both Wilson's motion for reconsideration and his request for *in camera* review of the agent rough notes.

Respectfully submitted this 16th day of January, 2013.


KENYEN R. BROWN
UNITED STATES ATTORNEY

By: */s/Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
(251)441-5845

(251)441-5131 (fax)
Christopher.Bodnar@usdoj.gov


### CERTIFICATE OF SERVICE

I certify that I have filed the foregoing pleading with the clerk of the Court using CM/ECF, which automatically serves a copy of the same upon counsel for the defendant this the 16th day of January, 2013

*s/Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney

-8-