# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No.  12-00293-KD** |
| | * | |
| **MOHAMMAD ABDUL RAHMAN** | * | |
| **ABUKHDAIR** | * | |
| **RANDY LAMAR WILSON, JR.,** *a.k.a.*, | * | |
| **RASHEED WILSON** | * | |
| | * | |

## RESPONSE TO MOTION TO DISMISS INDICTMENT

Comes now the United States of America, by and through the United States Attorney for the Southern District of Alabama, and files this response to defendant Randy Wilson's motion dismiss the indictment.  [Doc. No. 85] Wilson challenges the constitutionality of 18 U.S.C. § 2339A on the grounds that it is (1) facially vague, (2) vague as applied to him, and (3) overly broad.

For the reasons explained below, Wilson lacks standing to raise a facial vagueness challenge, and his as-applied and overbreadth challenges are meritless.  Accordingly, his motion to dismiss the indictment should be denied.

### BACKGROUND

Defendants Randy Wilson and Mohammad Abukhdair were arrested on December 11, 2012 and charged by complaint with conspiring to provide material support to terrorists.  [Doc. No. 1] The complaint was followed by a indictment charging both with conspiring to provide material support to terrorists, in violation of 18 U.S.C. § 2339A.  [Doc. No. 22]  Wilson has now filed a motion to dismiss the indictment.[1]  [Doc. No. 85]

---

[1]     As of the time of filing, co-defendant Mohammad Abukhdair has not joined in this motion.

**PROCEDURAL ANALYSIS**

The Federal Rules of Criminal Procedure require that an indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1).  The Eleventh Circuit has expounded on this by consistently explaining that an indictment is legally sufficient when it does the following three things: "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *See, e.g., United States v. Schmitz*, 634 F.3d 1247, 1259 (11th Cir. 2011); *United States v. Jordan*, 582 F.3d 1239, 1245 (11th Cir. 2009); *United States v. Steele*, 178 F.3d 1230, 1233-34 (11th Cir. 1999).  Wilson does not appear to dispute that the indictment meets these threshold standards.  Rather, he claims dismissal is necessary due to alleged constitutional deficiencies in the statute itself.  Specifically, Wilson alleges 18 U.S.C. § 2339A is unconstitutional because it is overly vague and overly broad.

## I.     The Issue of Standing

Wilson raises three constitutional challenges to Section 2339A — (1) facial vagueness, (2) as-applied vagueness, and (3) overbreadth.  Wilson must have standing to raise these constitutional challenges. *See generally, Harrell v. Fla. Bar*, 608 F.3d 1241, 1271 (11th Cir. 2010).  Thus, the first step in this analysis is determining the issue of standing as to each challenge.

The Eleventh Circuit recently explained that standing to bring a facial vagueness challenge is dependent on whether the statute is unconstitutionally vague as applied to the moving defendant and his unique set of facts:

> [A] party to whom a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional.  The rule developed from the recognition that constitutional rights are personal in nature; that prudential concerns counsel for limiting the scope of constitutional adjudications; and that

Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. The rule thus protects us not only against unnecessary pronouncement on constitutional issues, but also against premature interpretations of statutes in areas where their constitutional application might be cloudy. It also precludes a party from litigating the personal constitutional rights of others and avoids an undesirable foray by federal courts into every conceivable situation which might possibly arise in the application of complex and comprehensive legislation. Furthermore, it ensures that federal courts make informed judgments by limiting their decisions to actual, not hypothetical, cases that carry with them facts and data on which a well reasoned decision may be based.

In articulating this general rule in the context of void-for-vagueness challenges under the Due Process Clause, the Supreme Court has stated that a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. Recently, the Court clarified that the rule makes no exception for vagueness challenges that implicate the First Amendment. This clarification addressed a tendency of courts to analyze such vagueness challenges together with First Amendment overbreadth challenges, which are exempted from the rule.

*United States v. Di Pietro*, 615 F.3d 1369, 1372 (11th Cir. 2010) (internal citations and quotations omitted). For these reasons, Wilson cannot challenge the constitutionality of Section 2339A based on facial vagueness if the conduct he engaged in is clearly prohibited by the statute. *Id.* Therefore, analysis of Wilson's void-for-vagueness challenges must begin with his as-applied challenge to Section 2339A. If he fails to meet his burden of establishing that Section 2339A is unconstitutionally vague as applied to his specific set of facts, then he lacks standing to raise the facial vagueness challenge to Section 2339A.

Wilson's overbreadth challenge is also a facial challenge to the statute. However, for the reasons also explained in *Di Pietro*, Wilson has independent standing to raise this facial challenge:

Unlike void-for-vagueness challenges, overbreadth challenges fall into one of the few exceptions to the rule that confines an individual to addressing her own harm, and its exemption is justified by a weighty countervailing policy: that is, persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression. For this reason, a party to whom the law may be constitutionally applied may assert an overbreadth challenge to a law on the ground that it violates the First Amendment rights of others.

*Di Pietro*, 615 F.3d at 1372.

Accordingly, Wilson has standing to raise at least two of his three constitutional challenges; as-applied vagueness and overbreadth. However, his standing to raise the facial vagueness challenge is dependant on the merits of his as-applied vagueness claim.

### SUBSTANTIVE ANALYSIS

For the reasons explained below, Wilson's as-applied vagueness challenge to Section 2339A is without merit. Thus, he lacks standing to raise a facial vagueness challenge. Wilson has standing to raise a facial overbreadth challenge to the statute, but this challenge also is without merit. Accordingly, Wilson's motion to dismiss should be denied on all grounds.

## I.    Dissecting Section 2339A

Before analyzing Wilson's constitutional claims, it is necessary to examine what it is that Section 2339A actually prohibits.

Section 2339A prohibits conspiring to provide material support or resources, knowing or intending that the material support or resources are to be used in preparation for, or in carrying out, certain federal crimes of terrorism.[2]  *See* 18 U.S.C. § 2339A(a).  Conceptually, the statute can be thought of as having three parts: (1) the what; (2) to whom; and (3) under what circumstances.

First, "the what" that is prohibited by Section 2339A is the conspiring to provide material support or resources.  This first part is simple.  In the statute, Congress defined the term "material support or resources" as meaning:

> any property, tangible or intangible, services, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may include oneself), and transportation, except medicine or religious material.

---

[2]    Section 2339A does not use the term "federal crimes of terrorism." Rather, Congress enumerated the specific statutes whose violation can serve as the object offense for Section 2339A. These object offenses are the same offenses listed as "federal crimes of terrorism" as that term is defined in 18 U.S.C. § 2332b(g)(5)(B).

18 U.S.C. § 2339A(b)(1). Thus, Congress explicitly articulated what it is that persons cannot conspire to provide.

Second, is the issue of "to whom" the material support or resources cannot be provided. Although Section 2339A is entitled "Providing Material Support to Terrorists," this shorthand name for the statute is somewhat misleading. The term "terrorist" does not appear in the actual language of Section 2339A, and proof that the defendants conspired to provide material support or resources to those designated as "terrorists" is not required. *See* 18 U.S.C. § 2339A *and compare to* 18 U.S.C. § 2339B. Rather, the "to whom" is anyone preparing to commit or carrying out one of the specifically identified federal terrorism offenses. Essentially, Section 2339A prohibits the aiding and abetting of federal terrorism offenses.

Finally, Congress clearly articulated the circumstances under which material support or resources cannot be provided. Section 2339A prohibits providing material support or resources when the defendant *knows* or *intends* that the material support or resources are to be used in the preparation for, or in carrying out, a federal terrorism offense.

For the purposes of this case, the United States must prove that Wilson and Abukhdair conspired to provide material support or resources knowing or intending that it be used in preparation for or in carrying out a violation of 18 U.S.C. § 956(a), which prohibits conspiring to murder, kidnap, or maim a person outside the United States.[3]

With this understanding of what the Section 2339A prohibits, Wilson's constitutional challenges to the statute can now be analyzed.

---

[3]      As the United States thoroughly explained in its response to Wilson's motion for a bill of particulars, the United States need not prove the elements of the object offense, Section 956(a), in order to convict Wilson and Abukhdair of violating Section 2339A. *See* [Doc. No. 84, pp. 5–7] To the extent necessary, those arguments are incorporated in this response.

**II.    As-Applied Vagueness Challenge to Section 2339A**

Wilson contends that Section 2339A is unconstitutionally vague as it applies to him.  [Doc. No. 86, pp. 7–10]

**A.    Applicable Law**

The vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment. *United States v. Williams*, 553 U.S. 285, 304 (2008).  This is because a defendant would be deprived of his due process rights if he were convicted under an unconstitutionally vague statute.  *Id.*

A statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *United States v. Woods*, 684 F.3d 1045, 1057 (11th Cir. 2012) (quoting *Williams*, 553 U.S. at 304).   However, even with regard to criminal statutes, perfect clarity and precise guidance have never been required.  *See Williams*, 533 U.S. at 306; *High Ol' Times v. Busbee*, 673 F.2d 1225, 1229 (11th Cir. 1982).  This is because, "[a]ll the due process clause requires is fair notice by providing an ascertainable standard of guilt sufficient to enable persons of ordinary intelligence to avoid conduct which the law forbids."  *High Ol' Times*, 673 F.2d at 1229.

It must be noted though that "'statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.'" *United States v. Duran*, 596 F.3d 1283, 1290 (11th Cir. 2010) (quoting *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963)).  In addition, the mere fact that close cases can be envisioned does not render a statute unconstitutionally vague.[4]  *Williams*, 553 U.S. at 305.  As the Supreme Court explained:

> What renders a statute vague is not the possibility that it will sometimes be difficult
> to determine whether the incriminating fact it establishes has been proved; but rather

---

[4]    "Close cases can be imagined in any statute.  The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 553 at 306.

> the indeterminancy of precisely what that fact is.  Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent" — wholly subjective judgements without statutory definitions, narrowing context, or settled legal meanings.

*Id.* at 306 (internal citations omitted).

Finally, there is a "strong presumption supporting the constitutionality of legislation." *Duran*, 372 F.3d at 1290.  Moreover, the Supreme Court has long-held that in the context of a federal statute, federal courts have a duty, if it is fairly possible, to construe the statute to provide clarity and to avoid unconstitutional vagueness.  *See, e.g., United States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994); *Dennis v. United States*, 341 U.S. 494, 501–02 (1951).

The defendant bears the burden of demonstrating that a law is unconstitutionally vague as applied to the facts of his specific case, as opposed to vague in some hypothetical situation.  *See, e.g., United States v. Tichenor*, 683 F.3d 358, 366 (7th Cir. 2012); *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012).  Thus, it is Wilson's burden to demonstrate that 18 U.S.C. § 2339A is so vague that it either (1) "fails to provide a person of ordinary intelligence fair notice of what is prohibited;" or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Woods*, 684 F.3d at 1057.

### B.    Analysis of Fair Notice Prong

It is well-settled that ignorance or mistake of law is no defense to a criminal prosecution. *Duran*, 596 F.3d at 1290  (citing *Cheek v. United States*, 498 U.S. 192, 199 (1991)).  However, due process requires that a statute provide some guidance so that a person of ordinary intelligence is on fair notice of what is prohibited.

Generally, the presence of a scienter requirement in a statute undermines a defendant's ability to carry his burden on the lack of fair notice prong.  As the Seventh Circuit explained, "When the government must prove intent and knowledge, these requirements do much to destroy any force in

the argument that application of the statute would be so unfair that it must be held invalid." *United States v. Calimlim*, 538 F.3d 706, 711 (7th Cir. 2008) (internal citations and quotations omitted). Similarly, after noting the high scienter requirement in Section 2339A, the Southern District of New York explained:

> A defendant cannot complain about lack of notice when the statute requires a high level of specific intent for a violation.  Hence, due process concerns about notice under the test for vagueness are "ameliorated" when a statute contains a scienter requirement. . . . [The] culpable intent puts ordinary persons on notice that their conduct is within the scope of the statute and potentially subject to criminal liability.

*Sattar*, 314 F. Supp. 2d at 301.

As was previously discussed, Section 2339A requires proof that the defendant knew or intended that the material support or resources would be used in preparation for, or to carry out, a federal terrorism offense.  Because of the inclusion of this scienter requirement in the statute, Wilson faces an enormous uphill challenge to prevail on the fair notice prong.

Since this is an as-applied challenge, the inquiry is whether Section 2339A provides fair notice to a person of ordinary intelligence that the specific conduct Wilson and Abukhdair engaged in was prohibited by the statute.

In his motion to dismiss, Wilson characterizes his conduct as merely "encouragement of an amorphous terms such as 'jihad' in the abstract."  [Doc. No. 86, p. 7]  Wilson claims that he was arrested "because he voiced support for Sharia law and has associated himself with kindred spirits." [*Id.*, p. 8]  He also alleges that this prosecution is "based on nothing more than [Wilson's] desire to travel to a country that might situate him in the future as a protector of his faith."  [*Id.*]  These characterizations and allegations could not be further from the truth.

### (1)    Wilson and Abukhdair's Concept of Jihad

As an initial matter, it is important to briefly discuss Wilson and Abukhdair's concept of jihad, since the United States alleges their conspiratorial goal was to wage jihad overseas.

The term jihad has multiple meanings, and not all meanings involve violence. However, as the evidence will show at trial, when Wilson and Abukhdair discussed traveling overseas for jihad, they meant a very specific thing. To them, jihad equates to an actual violent fight in which people are injured and die. Below are a few demonstrative examples in which they explain their understanding of jihad:

On April 12, 2011, Wilson explained to a friend that the mujahideen[5] who engage in violent jihad will receive the greatest reward in the after they die. During the course of this conversation, the friend asked Wilson, "*And jihad is. . . .?*" to which Wilson responded, "*quital = fighting akhi, with guns and bombs and the hard stuff. It's hard and that's why the reward is the greatest.*"

On November 1, 2011, Abukhdair explained to Wilson and the UCE that: "*MashaAllah, I think, I think the problem is, people don't understand that, uh, jihad means people are going to die . . . . It's a war yani. Why are you getting angry at so and so. This is what jihad is. This is what war is.*"

On November 9, 2011, during a meeting between Wilson, Abukhdair, and the UCE, Wilson described jihad as a war between Muslims and the kufars, *i.e.*, the non-believers. Wilson explained, "*It's not a small war anymore. It's either we're gonna kill them and defeat them, or they're gonna kill us and defeat us.*" Later during that meeting, Wilson told the UCE about how he and Abukhdair had been listening to Anwar Aulqui's lecture, <u>Constants on the Path of Jihad</u>.[6] Wilson explained that Aulaqi "*was saying whenever you see the word 'terrorist,' just replace it with 'jihad.' Whenever you see the word 'terrorism,' just replace it with 'jihad.'*"

---

[5]     Also in this conversation, Wilson defined mujahideen as "*someone who fights jihad.*"

[6]     Anwar Aulaqi, an American citizen, was an operations leader and propagandist for the Yemeni-based terrorist organization, al-Qaeda in the Arabian Peninsula, "AQAP." Aulaqi was killed in Yemen on September 30, 2011.

On February 3, 2012, Abukhdair suggested conducting a domestic terrorist attack by taking hostages and demanding the release of Sheik Omar Abdel-Rahman[7] and Aafia Siddiqui.[8]  If their demands were not met, Abukhdair explained that, "*well at the very least, we kill them all.*"  After the UCE and Wilson rejected this idea in favor of continuing on with the original conspiracy to travel overseas to wage violent jihad, Abukhdair lamented, "*I don't know if you guys understand the greatness of jihad operation in the United States, man.*"

From these examples and many more, the United States will demonstrate that Wilson and Abukhdair specifically intended to engage in actual physical violence against others overseas.

### (2)    Wilson and Abukhdair's Actual Conduct[9]

Contrary to the defense counsel's characterization, this is not a case about two people being arrested because they discussed the tenants of Islam and expressed their dissatisfaction with the United States.  Rather, the evidence will show that from October 2010 through their arrests on December 11, 2012, Wilson and Abukhdair constantly, continuously, and explicitly conspired with one another in order to achieve their shared goal of waging violent jihad in a foreign country.

Their conspiracy likely formed around October 7, 2010 when Wilson, who was living in Mobile, Alabama, and Abukhdair, who was living in Alexandria, Egypt, began communicating

---

[7]     Sheik Omar Abdel-Rahman, *a.k.a.*, "The Blind Sheik," is the alleged mastermind of the 1993 World Trade Center Bombing.  In 1995, he was convicted of several charges and sentenced to life in prison.

[8]     Aafia Siddiqui was an MIT-educated Pakistani cognitive neuroscientist.  She allegedly had handwritten notes and a computer thumb-drive, which contained bomb-making instructions, when she was arrested in Afghanistan in 2008. While in custody, she grabbed an unattended rifle and began shooting at her interrogators.  She was subsequently convicted of assault with intent to murder her interrogators and sentenced to 86 years in prison.

[9]     This is only a small sampling of the facts the United States intends to prove at trial.  The facts included in this section are not intended to be exhaustive, and do not cover all the dates in which relevant communications or meetings occurred.  In addition, some of the quotes have been slightly modified to correct spelling mistakes.  The modifications were made to make the quotes more readable in this response.

In addition, the evidence contained in this section has recently become available and the United States is in the process of turning over this, and a great deal of similar evidence, to defense counsel.

about traveling to Somalia to wage violent jihad.  The advantages of going to Somalia were that al-Shabaab was already engaged in violent jihad there, and Wilson had a personal connection with al-Shabaab operational leader Omar Hammami.[10]   However, after exploring the viability of actually reaching Somalia, Wilson and Abukhdair concluded that they needed to consider alternate locations where there was a better chance that they could successfully wage violent jihad without first being arrested.

Wilson and Abukhdair had a very opportunistic and pragmatic approach to finding a suitable foreign local in which to wage violent jihad.  As Wilson explained to Abukhdair on several occasions, "*the Earth is a battlefield*," and *"Just remember, Akhi, the world is a battlefield.  Jihad is not restricted to any particular land.*"  Thus, over a nearly two-year period, they analyzed a variety of locations, including, Somalia, Mauritania, Yemen, Egypt, Pakistan, Sudan, Morocco, Jordan, Saudi Arabia, South Africa, and Algeria, as either interim or final destinations.  The primary criteria for choosing a location included: (1) the ability to get into the country; (2) the opportunity to make contacts and be vetted for jihad; (3) the ease with which they could travel from an interim country to a country where a violent jihadist struggle was occurring; (4) the cost of living while in an interim country; and most importantly (5) the likelihood that they could achieve their goal of waging violent jihad without being arrested.   In addition, they regularly discussed how best to disguise the true nature of their travel plans.

Below are a couple of examples that are indicative of the manner in which Wilson and Abukhdair analyzed possible travel destinations:

---

[10]    Daphne native Omar Hammami traveled to Somalia in 2006 where he allegedly joined al-Shabaab. On February 26, 2008, the United States Secretary of State designated al-Shabaab as a Foreign Terrorist Organization.  Hammami has been indicted on terrorism charges in the Southern District of Alabama.  On November 14, 2012, Hammami was placed on the FBI's "Most Wanted Terrorists" list.

During a conversation on October 7, 2010, Wilson told Abukhdair that Hammami "*was my roommate and we grew up together.*"

On October 12, 2010, Abukhdair told Wilson that a person on a jihadist web forum told him not to go to Somalia because it was too difficult to get in.  In light of this, the two began considering alternate locations.

> Wilson:       *Akhi, listen, have you thought about other places?*
>
> Abukhdair:   *Like where akhi?  Are there easier places?  I feel like Somalia is the easiest place.*
>
> Wilson:       *The Earth is a battlefield, Akhi.  Yemen, Mauritania, these places.*
>
> Abukhdair:   *Yemen is almost impossible to enter these days, but the other places I don't have contacts and I don't know where to start.*

On February 2, 2011, Wilson and Abukhdair discussed traveling to Pakistan under the guise of attending a friend's wedding. Wilson explained that they should purchase round-trip tickets to avoid suspicion.  He then told Abukhdair, "*I think if someone could get into Pakistan, it would be easy after that.  Just go to Peshwar.  Waziristan is like less than an hour away.*"[11]  Wilson also reiterated, "*the Earth is large.  Many places to go.*"

On September 23, 2011, Wilson and Abukhdair discussed the possibility of traveling to either Mauritania or Sudan.  With regard to Sudan, Abukhdair noted, *"we need a reason to go.*"

> Abukhdair:   *"Tourism" doesn't cut it in a place like Sudan, lol.*
>
> Wilson:       *Loooool.  Well we can say we are coming to apply for the Islamic university there.*
>
> Abukhdair:   *True.*
>
> Wilson:       *Or to study Arabic.  Anything.  Mauri I think is more straight forward. They'll give us the look, I slip a hundred in the passport, and bada bang LOOL.*

On October 11, 2011, Wilson and Abukhdair decided Egypt and Morocco are too risky, because they might get arrested, Jordan is too expensive, Turkey is too European, and Lebanon is

---

[11]      Peshwar is city in the FATA region of Pakistan along the Afghan border.  Waziristan is a mountainous region of Pakistan along the Afghan border.  Both have significant Taliban presence.

too Christian.  Wilson then broke it down: "*If we think about it seriously, this what it boils down to. Jordan is easy, but dangers and expensive.  Mauri is cheap, but probably hard to get a visa for, and Sudan is hard to get a visa for and we don't know a lot about it.*"

Wilson and Abukhdair did not spend hundreds of hours over the course of two-plus years researching and analyzing possible travel locations just for fun.  They did so because they were actively conspiring to travel to one of these locations in order to achieve their shared goal of waging violent jihad.  As Wilson explained to the CHS in a recorded conversation on October 12, 2012, it was important for them to get into a safe country overseas which they could use as a launching point to travel to a nearby violent jihadist front.  Thanks to his meticulous research and analysis, Wilson correctly predicted that violent jihad was likely imminent in northern Mali.  Thus, the decision was finally made to travel to neighboring Mauritania.

### (3)    Application of the Facts to the Law

As previously discussed, Wilson bears the burden of demonstrating that Section 2339A fails to provide a person of ordinary intelligence fair notice of what is prohibited.  *See, e.g., Tichenor*, 683 F.3d at 366; *Kernell*, 667 F.3d at 750.  Furthermore, for reasons already explained this is a very onerous burden in light of the *mens rea* requirement explicitly stated in Section 2339A.   *See Calimlim*, 538 F.3d at 711; *Sattar*, 314 F. Supp. 2d at 301.

Section 2339A clearly provides a person of ordinary intelligence with fair notice that the specific conduct Wilson and Abukhdair engaged in was prohibited by federal law.  As was explained above, for over two  years, Wilson and Abukhdair conspired to travel overseas to join a group with whom they could wage violent jihad.   Being opportunistic, the locations changed depending on where they thought they would have the best opportunity for success without being arrested; however, their intentions remained the same.  Thus, Wilson and Abukhdair conspired to provide personnel, *i.e.,* themselves, as material support to others knowing or intending that they would be

used in preparation for, or in carrying out, a conspiracy to murder, kidnap, or maim persons in a foreign country. This is exactly the conduct that Section 2339A explicitly prohibits.

It should also be noted that even if the objective standard did not apply, Wilson certainly had subjective knowledge that his actions were prohibited by federal law. As Wilson explained to Abukhdair on April 27, 2011: "*The thing is akhi, I've read almost every indictment from the brothers arrested, so I have a pretty good idea what gets you arrested. . . . The ones who are arrested are the ones who tried to travel to Somalia or whatever, or people who planned on committing terrorism here.*" Thus, Wilson certainly had actual knowledge of the illegality of his actions. Wilson calculated the risk of being caught, took the chance, and was arrested, just as he expected he might be, at the airport trying to leave the country.

Wilson has the burden on a vagueness challenge, and he has not come close to prevailing on the lack of notice prong. Accordingly, the Court should reject his argument that Section 2339A fails to provide individuals of ordinary intelligence notice that his actions would be prohibited by federal law.

### C.      Analysis of the Minimal Standards Prong

It is unclear whether Wilson actually challenges Section 2339A on the basis that it fails to provide at least minimal standards for law enforcement. However, since he alleges that the statute "allows an interpretation by the Government that erases the dividing line between free speech and criminal conduct," the United States will assume he is doing so.

In addition to being undeveloped, this allegation is without merit. Wilson does not analyze the language in the statute nor articulate why he believes the statute erases a line between free speech and criminal conduct. Furthermore, he does not address any of the opinions in which other courts have rejected this argument. For instance, in holding that Section 2339A is not unconstitutionally vague, the Southern District of New York explained:

-14-

[Section 2339A] does not leave it to the arbitrary whims of police, prosecutors, and juries to determine who has violated its commands. The statute lays out with sufficient definiteness what is prohibited, and the specific intent that is required, so that enforcement of the statute is not left to the arbitrary and discriminatory choices of law enforcement officials.

*United States v. Sattar*, 314 F. Supp. 2d 279, 303 (SDNY 2004); *see also United States v. Amawi*, 545 F. Supp. 2d 681, 685 (N.D. Ohio 2008).

For these reasons, Wilson has not carried his high burden to establish that Congress failed to include minimal standards for law enforcement in Section 2339A.

### D.   Conclusion

Wilson has not come close to carrying his burden of establishing that Section 2339A is unconstitutional as the statute has been applied to him. Accordingly, this constitutional challenge to the statute should be rejected.

### III.   Facial Vagueness Challenge to Section 2339A

For the reason set out in the previous section, Wilson as-applied challenge to Section 2339A is without merit. The facts in Wilson's case fall squarely within the conduct Section 2339A clearly prohibits. Therefore, for the reasons explained by the Eleventh Circuit in *Di Pietro*, Wilson lacks standing to raise a facial vagueness challenge to the statute. *Id.*, 615 F.3d at 1372.

Accordingly, Wilson's facial vagueness challenge should be dismissed for lack of standing.

### IV.   Overbreadth Challenge to Section 2339A

### A.   Applicable Law

The overbreadth doctrine "prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002). A claim of overbreadth is a facial challenge to the constitutionality of the statute itself. *See Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503 (1985). A defendant can raise a facial overbreadth challenge even if his specific conduct is not the

type of protected activity he alleges the overbroad statute infringes upon. *See Di Pietro*, 615 F.3d at 1372.

Courts have long recognized that there is an extremely high bar for invalidating a statute due to overbreadth:

> The Supreme Court describes facial invalidation for overbreadth as strong medicine that has been employed by the Court sparingly and only as a last resort. The Court has vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep, before it may be invalidated.

*United States v. Dean*, 635 F.3d 1200, 1204 (11th Cir. 2011) (citing *United States v. Williams*, 553 U.S. 285, 292 (2008); *Broadrick v. Oklahoma*, 423 U.S. 601, 613 (1973)). Furthermore, the "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Williams*, 553 U.S. at 303 (quoting *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)).

It is well established that the challenging party bears the burden to prove substantial overbreadth. *See, e.g., Virginia v. Hicks*, 539 U.S. 113, 122 (2003); *Dean*, 635 F.3d at 1204. Thus, it is Wilson's burden to demonstrate that 18 U.S.C. § 2339A "criminalizes a substantial amount of protected expressive activity." *Dean*, 635 F.3d at 1205 (quoting *Williams*, 553 U.S. at 297).

## B.    Analysis

To satisfy his burden, Wilson (1) must identify protected activities that would be targeted by the statute, *and* (2) must demonstrate that such protected activities "are substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Dean*, 635 F.3d at 1206.

Wilson has come no where near satisfying the heavy burden necessary to prevail on this challenge. Rather than provide an in-depth analysis with concrete examples demonstrating how Section 2339A criminalizes a substantial amount of First Amendment protected activities, Wilson simply states general principles of First Amendment law. Wilson failed to provide even a single

example of how constitutionally protected activity is criminalized under Section 2339A.  Merely

claiming, in an unsupported manner, that Section 2339A "chills the right of free speech," or that the

statute prohibits advocacy of Islam, is not nearly enough for Wilson to meet his burden.

Contrary to Wilson's claims, Section 2339A does not criminalize constitutionally protected

activities.  Rather, the statute criminalizes conspiring to provide material support or resources,

knowing or intending that they are to be used in preparation for, or in carrying out, a federal

terrorism offense.  Wilson and Abukhdair face serious terrorism charges not because they espoused

their religious beliefs or their disdain for this country.  Rather, they are charged with forming an

agreement to engage in criminal activity.  Their conduct is assuredly not protected by the First

Amendment.  *See United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("Forming an

agreement to engage in criminal activities — in contrast with simply talking about religious or

political beliefs — is not protected speech."); *United State v. Sattar*, 314 F. Supp. 2d 279, 301

(SDNY 2004) ("The First Amendment provides no protection for the conduct of providing resources

knowing and intending that they are to be used for crimes of violence.").

## C.    Other Courts Have Rejected Facial Overbreadth Challenges to Section 2339A

In addition to Wilson failing to meet his burden, it is also important to note that other courts

have rejected this same facial overbreadth challenge to Section 2339A.  As can be seen from the

examples below, this overbreadth challenge has been frequently raised, and routinely rejected, in

terrorism cases.

In 2008, the Northern District of Ohio rejected an overbreadth challenge to Section 2339A,

and held "[t]here can be no doubt . . . that §2339A is a legitimate exercise of Congress' power to

enact criminal laws that reflect legitimate state interests in maintaining comprehensive controls over

harmful, constitutionally protected conduct." *United States v. Amawi*, 545 F. Supp. 2d 681, 683

(N.D. Ohio 2008).

Rejecting the same challenge two years earlier, the Eastern District of New York noted the defendant "failed to describe any situation in which even an insubstantial amount of speech may be restrained because of §2339A(a) and cites no case law in which this statute (or §2339B) has been found overbroad." *United States v. Awan*, 459 F. Supp. 2d 167, 180–81 (E.D.N.Y. 2008).  The court went on to hold that, "[t]he focus of §2339A(a) is on the prohibition of acts which assist in the furtherance of criminal activities, not expression, and it is not apparent how a reasonable person might read the statute to incorporate protected expression as well."  *Id.*

Finally, the Southern District of New York rejected a Section 2339A overbreadth challenge, and held that the defendant failed to demonstrate "that § 2339A, on its face or in actual fact, prohibits any constitutionally protected expression, much less that any possible overbreadth is 'substantial' when judged in relation to the statute's plainly legitimate sweep." *United States v. Sattar*, 314 F. Supp. 2d 279, 304–05 (S.D.N.Y 2004).

### D.    Conclusion

Wilson has not carried his burden to prove that Section 2339A is unconstitutionally overbroad.  Furthermore, other courts have already rejected this same facial overbreadth challenge to Section 2339.  For these reasons, Wilson's facial overbreadth challenge should be denied.

## V.    Undeveloped Challenge to Section 2339A Regarding the Right to Travel

At the beginning of his motion, Wilson contends that Section 2339A violates "the United States Constitution's Right to Travel guarantee."  [Doc. No. 86, p. 2]  He does not develop this claim.  It is completely frivolous.

Although the word "travel" does not appear in the Constitution, the Supreme Court has long held that there is a firmly embedded constitutional right to travel *within* the United States.  *See Saenz v. Roe*, 526 U.S. 489, 499 (1999); *United States v. Guest*, 383 U.S. 745, 757 (1966).  However, there is no such constitutional right to travel to another country.  A person's ability to travel to a foreign

country is contingent on that foreign country issuing the person an admission visa.  Generally, the United States has no say over whether an American is admitted into a foreign county.

To the extent that this claim has actually been raised, it should be denied as frivolous.

<u>CONCLUSION</u>

For the reasons set out in this response, the United States requests that Wilson's motion to dismiss the indictment [Doc. No. 89] be denied.

Respectfully submitted this 20th day of March, 2013.

KENYEN R. BROWN
UNITED STATES ATTORNEY

By: */s/Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney
63 South Royal Street, Suite 600
Mobile, Alabama 36602
(251)441-5845
(251)441-5131 (fax)
Christopher.Bodnar@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I certify that I have filed the foregoing pleading with the clerk of the Court using CM/ECF, which automatically serves a copy of the same upon counsel for the defendant this the 20th day of March, 2013

*s/Christopher J. Bodnar*
Christopher J. Bodnar
Assistant United States Attorney